Mr. Dale, I think we have to congratulate you on getting here, in light of airplanes, weather, and everything else. It's always nice to be here. It's a little dicey there. We had a little mechanical problem on our airplane that slowed us down for an hour and a half. So my name is Lon Dale. I appear here on behalf of Stephan Johnson, the appellant in this cause of action. I'd like to reserve a couple minutes for a rebuttal. I may refer to Mid-Century as Farmers because traditionally the Farmers Group has a number of insurers, and we always say Farmers as opposed to the specific insurance company involved. And of course Mid-Century is the named insurer in this instance. I should not be standing here because this case should have been remanded back to the state court on our motion to remand after it had been removed to the federal court. And it should have been remanded because the jurisdictional limit has not been satisfied. And we'll get into the specifics of that, but it's very clear that what is at issue here is one aspect of our client's policy, which has to do with underinsured motorist coverage, and it's undisputed that the amount of that is $35,000. Under Montana law, in fact a case established by this court, the Reardon case, we can obtain attorney's fees if we're successful in showing that coverage has been denied by an insurer. So we would be entitled to our attorney's fees if we were successful. We have a contingency fee, and that's all of record here, of 40% in the event that there is to be an appeal. So you add those together, what we have in dispute here is $49,000, short of the jurisdictional limit. I think it's important to review very briefly the factual circumstances that resulted in the claim for UIM coverage. Counsel, before you do that, it feels like the UIM coverage, you've described your client's claims here very, very succinctly, but those are not the only claims that you alleged in the complaint. That's correct, Your Honor, and I'm going to get to that. Well, I shouldn't say we – often Montana has common fund claims, and so oftentimes we plead common fund in a situation where we think that the factual circumstances and the law could potentially trigger a common fund establishment where others similarly situated could benefit from the result of the court's ruling. How is this different from a class action? Excuse me, Judge? Yeah, how is that different from a class action? How does that – How is a common fund action different from a class action? Oh, certainly. Well, a common fund is kind of a unique thing to Montana law, and it differs in that it doesn't require a certification. In other words, you don't have to have a certified class because the class would then be – for example, let's just look at what could have been or what might have been and what they have absolutely failed to show you, and that is how many cases have they conducted themselves in a similar fashion to this case and denied coverage. Now, let's assume that – Excuse me. The question then turns. They've alleged if you insert common fund into the jurisdictional equation, you get above $75,000 because of their 10% figure. So would you address why you think their common fund allegation of jurisdiction is not sufficient to meet the rules? Yes, I'll do that. That's the question we have. Let me answer your question, but first let me give you a brief background and then I'll get into answering your question. Well, why don't you answer the question first? Because that's really what – we've read all the briefs. We've read the cases. So if you'd answer the question, that would get us closer to figuring out the case. Well, I realize, but I think there has to be some background. To have a common fund here, we have to have two policies, and that's been completely overlooked by the district court because the district court decided this based upon an intra, that's one policy stacking situation, as opposed to an inter, two policy stacking situation. And that's – if that doesn't answer your question, Judge McEwen, let me just give you a little bit of background. It doesn't answer my question because I understand that you've got a situation where the individuals, where you aggregate them, need to have the two policies because that implicates this question of the stacking. But they've given you a hypothetical situation of the 10% or whatever in their common fund. Why isn't that sufficient to meet the use of a common fund? It's their burden of proof. Okay. Now we're getting to the bottom. It's their burden of proof to show that there is a common fund. And that's why I wanted to get into this background a little bit because there has to be two policies. And my point is that this – I've been practicing law in Montana for 52 years. I've been around a lot of farmers' policies. But in that 52 years, I've seen one situation where the insured had two policies, and you're looking at it right here in this case. So you're saying this is a common fund of one? I'm a common fund of one. Or it may be. Or it may be. You don't know. You don't know. You don't know. And so there's no – But if you thought that you're a common fund of one, why did you make the allegation? Well, because we – because, Judge Bivey, we normally do that because in a situation like this, to cover the pleadings, we would say, well, that might be a common fund. And we would have to still prove the common fund, so we would make a general allegation of the common fund. I've had a number of common fund cases through my career, and, you know, you never know it's going to be a common fund until you get a discovery. That's an important thing here. We never got any discovery. You know, they removed us. They file a motion to dismiss. We don't get any discovery. We ask the court stay the ruling on that until you decide the jurisdictional limit. No, we get a decision. Jurisdictional limit is satisfied even though the judge absolutely discounted their argument that you automatically get $50,000, and then the judge speculates, well, you've got a common fund. Well, wait a minute. They've got to prove that there's a common fund. Here's the question I want you to ask them that isn't in their briefing, and they can answer it with their sophisticated computers that they have. And that question is, how many Montana insureds does mid-century have that have two policies? And I'll venture to guess it may be zero. And the reason for that is when we filed our motion for summary disposition, we presented an affidavit, a declaration, from a retired farmer's agent, Bruce Danielson. And that motion is before the court, too, in summary disposition. And what that motion involved, or what that declaration involved, is Mr. Daniels saying, well, under the protocol, under a farmer's protocol, they limit the number of vehicles in a policy to five. After five, you get a second policy. That's exactly what happened to the Johnsons. They had five vehicles, and they had six vehicles, five on one policy, one on the second policy, and that's the policy that's in question here, the second policy. Well, the question then becomes, to have this common fund, how many insureds of mid-century have six vehicles? Because we're only going to have this stacking issue that we have here if we have two policies. They know the answer to that. I mean, we were expecting that they would give us some statistical information on that. Nothing. I mean, the bottom line, you've kind of complicated that issue, it seems to me. Your position, as I hear it, is they didn't come forward with the evidence, and they have the burden on jurisdiction. Is that right? They have the burden of showing that the jurisdictional limit exists. That's our position, Judge McEwen. And they haven't satisfied that burden here. I mean, they... So, I mean, and it gets more complicated than that. Okay, so let's say... Well, let me ask you, if we were to agree with you that they have not satisfied the burden, would the remedy be to remand to the district court for further discovery or simply to remand with instructions to send it back to the state court? I'm going to turn up my hearing a little bit, Judge McEwen. I would say remand to district court with instructions to remand to state district court. I don't think they should get a second bite of the apple here. I mean, they've had the proof, they've had the opportunity to tell you whether or not they have... how many insureds they have with more than one policy. And then it gets more complicated because then to have that common fund, now you have to have that individual have a UIM claim. And this is back to the point that I... the background. I mean, what we have here is a client seriously injured in a rollover. He makes a claim against the driver. He hits the policy limits for that incident, which is $50,000. He then makes the claim against farmers, a mid-century, under his UIM coverage. And like I said, our client says, I have two policies. I thought he was mistaken because I've never seen two policies. But sure enough, he has two policies. That second policy, and this is critical, and this is a point that the magistrate absolutely avoided in her decision. And the point is that there was a specific premium on that policy. I mean, look at the cases we've cited. Any attorney dealing with stacking in Montana will tell you there's three important cases that you have to know about. The Bennett case, the Hardy case, and the Gibson case. We've cited them. The magistrate didn't even cite those cases in her decision. They're not in there. But if you look at the Parrish decision, which she did cite, and keep in mind that the Parrish decision and the Lowe decision are inter-policy stacking situations. The claimants there were trying to argue statistically that there was coverage even though there wasn't a specific premium paid for vehicles under those intra-policy stacking cases. They're not applicable to our facts. We have two policies. But most importantly, we have a specific premium paid for the coverage in dispute. And if you look at the Parrish decision, paragraphs 17 and 21 of that decision, they actually reference in the Parrish decision the controlling cases. Bennett, Hardy, Gibson, and Parrish, the kind of unique facts. They acknowledge the fact that the med pay was stacked in that circumstance because there were specific premiums paid for it. I mean, the Bennett case was a case from this circuit that was certified to the Montana Supreme Court. There were two policies of a state farm individual. In fact, I know the claimants in that case because the claimant, Lyman Bennett, was an attorney in Bozeman. And his wife was injured as a pedestrian. And so it came to this court. This court certified the question to the Montana Supreme Court. And the Montana Supreme Court said they're stacking because the individual, the Bennetts, paid separate premiums for two policies. State farm was arguing, no, you only get one coverage because you only get the coverage for the vehicle you were occupying. So the magistrate's decision is strange to me because she avoided the controlling case law. And I guess I'm in trouble here time-wise. Well, we'll ask Ms. Dodds to put two minutes on the clock for rebuttal when you come back. And why don't we now hear from your opposing counsel? Excuse me, Judge. We'll put two minutes on the clock for rebuttal when you come back up. And we'll hear from your opposing counsel. Ask him the question. I mean, I think we're a common fund to want. Thank you, Mr. Kittle. So thank you very much. Good morning, and may it please the Court, Alex Somaya and Nick Pagnot on behalf of MidCentury Insurance Company. I'll dive right into the jurisdictional question and the place to start with the common fund allegations, our plaintiff's complaint. Now, my colleague is arguing that the common fund is one because we need two policies with different limits. Those weren't the allegations in the complaint. The complaint alleged that a Montana endorsement, MT-028, was void against Montana public policy. The record at the time the district court addressed the remand issues showed that there were nearly 37,000 policyholders with that same endorsement. So accepting the plaintiff's allegations as true, that would have voided the foundational building block of UIM coverage. Right. I mean, if you think that's what's actually at stake in the lawsuit. But I guess I question whether that's a fair reading of the complaint, right, which talks about similarly situated plaintiffs being part of a common fund. And, well, I would point the Court then to paragraphs 41, 42, and 51. And 42 states that endorsement MT-028 is voidable as illusory coverage against public policy. It's a broad allegation. And then in paragraph 51, it says a common fund would be created as to all similarly situated Montana insurers within eight years and denied stacking. So we have 37,000 policyholders. If that's the case... No. And who had the UIM and were denied stacking. So it's within the insurance company's files to know which of the 37,000 had a claim in which stacking was an issue. But did you put any evidence in on that point? Apart from the policyholders, there was nothing in the district court. That's why in our answer brief, we also discussed the either viewpoint rule, which is the burden to our client if the plaintiff succeeds. Right, but that doesn't really... That becomes the problem, it seems to me. The issue still is what is the evidence that we have to say that there is going to be a common fund of anybody beyond the plaintiff here? The mere fact that he's alleging to void a policy with an endorsement across the board with 37,000 policyholders. Who came up with the 37,000 figure? That was in the record. It was produced when we submitted the... It was produced by MidCentury? It was, I believe, from the insurance commissioner, or it was part of that process where our client had submitted the UIM rates. I think he's pretty reasonably said, look, this is an unusual situation. Yeah, the writer's out there. It's just standard language. I can understand why farmers in MidCentury would want that language in every policy. But it doesn't seem like it would be a terribly large burden for you to come forward and say, we're not going to give all of this away at this point. We may be subject to discovery at another time. But here's a declaration that says we had at least five, we had 10, that have dual policies with this writer on there that are potentially members of this common fund, and therefore... But you didn't come forward with anything. No, but again, I would go back to the mere fact of that many policyholders. And we talk about Rule 8 and common sense standards that apply that the district court used. And I think one example could be... Well, the district court didn't really use any common sense standards. The district court was imputing this attorney fee, like eight possible plaintiffs with a 10% cut on the attorney's fees. Where did that come from? I believe the district court looked to prior precedent and... No, I mean, it was made up, right? There's no evidence in the record to that. I think this is what's troubling in this case, is that the evidence is in the hands of the insurance company, which has the jurisdiction burden. But the insurance company didn't come forward with anything, so then the district court kind of conjured up some possibilities, which seemed to me to be purely speculative. So that's where I kind of stopped cold on jurisdiction, just so you know. I can't understand the foundation for a common fund jurisdiction here. Again, I think it's just the broad, sweeping nature of the allegations that were made in the complaint. And one of the decisions we point to is the level of decision from the Tenth Circuit. It's a similar nature here because if the plaintiff prevails, as we assume, and we disagree on the merits, but assuming he prevails, that affects mid-century's business throughout the state of Washington. I just don't think even the district court thought of this in the broad terms you're talking about. If that was true, the district court could have said, this puts at issue a standard policy language that tens of thousands of Montanans have, and so it's therefore obvious that we're going to easily hit 75,000. But that's not what the district court did. The district court went a different route trying to come up with a theory as to how we could get eight people times 35,000, 10% off that, and that gets you the difference up to 75. So I don't even think the district court agreed with the way you're casting this. No, and that's a different argument, and we cite at the very end. It's the same claim, the claim that there's 1332 jurisdiction with an alternate argument, and we cite the courts of, for example, the Citizens United case. There is a decision from this court in 2004 and then the city of Escobedo decision and the LeBron decision that talk about if a claim is preserved, an appellant can use an alternative argument on appeal. In the Citizens United case, for example, the claim was that the statute issued that there is a first amendment violation. I get that, but it seems to me then your whole argument turns on a characterization of the complaint because in your characterization of the complaint is it's putting at issue this policy language across all policies, and your friend on the other side is saying that is not what this complaint is doing. It is putting it at issue with respect to people who are like my client who have two policies, which he claims is rare and does seem to be. So with this endorsement, it addresses stacking for inter-policy and intra-policy. The allegation is that the endorsement is out the door. The endorsement also defines UIM coverage. So if it's void, our client under Montana law, this is 3315.1106, has to mail a notice to every single insured that it is now restricting policy. If we assume $1 for postage, printing the paper, I think it would be more than that. But void as to whom, right? There just doesn't seem to be a meeting of the minds between the parties on what's actually at stake in the litigation. And we have the plaintiff saying we are not putting at stake all the things that you're saying. Now on appeal they've said that, but the complaint is broader. It is trying to avoid this endorsement across the board. Well, you didn't raise what I guess we're characterizing as viewpoint basis in the trial court, correct? No, and that's where I went back to the trio of U.S. Supreme Court cases. We've made the claim. It's an alternative argument in support of the same claim. I understand, but you didn't raise that below, so we didn't have any calculations on that. We have kind of an appeals brief that makes these calculations, and they say no, as I read it, we're not seeking to invalidate the endorsement in its entirety, only claims where there's the two policies and you have the UAM on both. But again, we have to go back to the complaint at the time of removal, and the complaint is more broad than that. At the time it was removed to federal court. And that's your best argument, is that because they used the word common fund in the complaint and you don't think it was restricted, that you've met your burden. Again, yes, it's going back to the real-life principles that go into removal, because the plaintiff could have very well applied this as a simple breach of contract declaratory judgment action, and then it would have been in state court. The common fund was brought for a reason, so we have to assume with common sense that there's something there. And that was part of the general duck action theory, that the endorsement is out the door. So then our client has to reformulate UIM coverage in the state of Montana, because if there's a ruling that this endorsement violates Montana law, they have to go back to the drawing board, they have to mail that to 37,000 policyholders. And if the ruling was that it's invalid as to individuals who had the multiple policies and the UIM on those multiple policies, that would be a different universe, right? If that had been what the plaintiff... I mean, that's what... You know, what I'm having trouble with is I appreciate that Mr. Johnson's counsel, in an abundance of caution under Montana law, would want to allege common fund generally, but then you would still have to show what is the basis for jurisdiction under the common fund? And you just say, well, it's 37,000 people or policies. That is the number of policyholders, nearly 37,000. So yes, that would affect every policyholder. Do you know how many policyholders there are that would fall into the category of Mr. Johnson? Well, it depends on if we're asking more than one vehicle or more than one policy. I don't have a specific number. But the insurance company has that information where you could say this would be the more than one vehicle universe and this would be the more than one policy universe, correct? I would have to check with my client. I suspect we could gather... I assume they could come up with that. I mean, it just seems to me that the company hasn't come forward with any hard jurisdictional facts. And your only defense to that is to say, well, we read the common fund broadly. Because it's pled broadly, Your Honor. Again, in the complaint, it was broad. It wants to avoid a standard form endorsement for everybody. So that endorsement has to be redone. The cost to our client is well in excess of $75,000, even if we just assume what the plaintiff will collect and $1 in postage and paper to send a new form to each insured, which my client would have to do under Montana law. Are these... this seems very different than the arguments that were put in front of the district court. When I went back and looked at the opposition to the motion to remand, it seemed there the argument was the plaintiff's counsel would be able to get $50,000 in attorney's fees just off of this claim and we can aggregate the amounts in the actual common fund. And the district court, or the magistrate, excuse me, did not like the former arguments, and the second one doesn't seem correct as a matter of law. So what we're talking about now are just arguments that were nowhere put before the district court. And that's where I went to the City of Escobedo, LeBron, and Citizens United decision. It's now... we have the alternative argument in our brief as to the common fund and common and undivided. But before that, we have the either viewpoint. Right, but it's premise on understanding the complaint that was never put to the magistrate, so far as I can tell. As to the either viewpoint rule, well, the claim was that there was diversity jurisdiction. The alternative argument is different on appeal, but which I believe the Supreme Court precedent says is appropriate. You can change... you can make an alternative argument in support of the same claim as you go on appeal under those three decisions. And this court has cited that line in the 2004 decision we cite. So there's an alternative basis that we've advanced on appeal in support of the same claim, the 1332 jurisdiction exists, to provide a basis to affirm the district court and fine jurisdiction. Because under the either viewpoint rule, assuming the plaintiff is successful, the cost to our client will be in excess of $75,000 because it's standard form endorsement that defines UIM coverage, provides anti-stacking languages out the door. Under Montana law, it has to be... potentially. Again, would disagree with the merits of that, but that was the allegation, that it violates Montana public policy. So we have two jurisdictional bases to support fining 1332 jurisdiction. With respect to the discussion of premiums as to Hardy and Bennett and Gibson, all those cases involved multiple policies... or, excuse me, multiple premiums. The anti-stacking statute also discusses situations where there are multiple policies in Montana. So the same analysis from Parrish applies. The coverage is not able to stack because there was only one premium charged, and that's just going back to a statutory construction phase with the anti-stacking statute. So just to go back on diversity jurisdiction, I think there are two ways to affirm the district court with respect to the either viewpoint rule, which is an alternative argument in support of the same claim, or if we go to the common and undivided, it's using reasonable common sense. But both of those, just to be clear, are premised on your understanding that the complaint is putting at issue this policy language across 37,000 because we would have to agree with you on that in order to get to these points. Well, I'm just reading the complaint. It says that the endorsement is void. That endorsement is in almost 37,000 policies. That was with the Montana Commissioner of Insurance. So the way that's read is the plaintiff is asking the court to declare this is invalid. Insurance company go back to the drawing board, come up with a new form, and the cost to our client is in excess of $75,000. And that's why I go to that level decision from the Tenth Circuit. Also applies to either viewpoint rule, which is consistent with this court's precedent. There was no specific number in that opinion discussed as to the number of insureds. In that particular situation, the Tenth Circuit found that this would affect state farms business throughout the state, and that the cost of making them change their business practice in the state led the court to determine it's in excess of $75,000. So they're almost out of time, but happy to answer any other questions. It doesn't appear there are any. Thank you very much for your argument this morning. Thank you. Mr. Dale, we'll put two minutes on the clock for your rebuttal. Thank you, Your Honor. Well, this endorsement that they're talking about, which they used to deny our coverage, saying, well, you only get coverage for the larger policy, which they paid, the $50,000 under Policy 1. You only get that because our endorsement says that's all you get. Well, the question then becomes, back to my initial argument, how many two-policy insureds do you have? I guess their argument, looking at the complaint, is that they're saying that you said in the event you're successful in establishing that the mid-century endorsement, MTO28, is against public policy, then there would be a common fund as to those similarly situated. But, Judge McEwen, there has to be two policies, and there has to be a UIM claim before it's triggered. So, I mean, fine, they have all these endorsements, like we said in the brief. So what? It's not triggered until the facts come into play that would allow it to be triggered, which would require two policies. They haven't told you how many two policies they have. So are you not alleging that MTO28 is void against public policy, and in every policy in which it appears? Judge Bidey, our position is that that endorsement, it couldn't be voided unless there's two policies. So it's only void in the situation in which there are two policies. Our position is that it doesn't apply here, and the reason it doesn't apply is basic Montana stacking law, back to what we talked about initially. It's the Bennett decision, the Hardy decision, the Gibson decision, and what do they say? If you talk to any Montana attorney that does personal injury, the question they're going to ask in a stacking case, did the insurance company charge a separate premium for the coverage? It's that simple. If they charge this separate premium for the coverage, they have to pay it. I think they charge this separate premium for this coverage in this case. We've let you go a little over your time, but I want to see if my colleagues have any further questions for you. Mr. Dale, I want to thank you for your argument. I want to thank your opposing counsel for his argument. This matter is submitted. Thank you. We appreciate your time. Thank you. Thank you.
judges: McKEOWN, BYBEE, BRESS